SEALED

AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
Middle District of Florida

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No. |
| JUSTIN RICHARD TESTANI | ) | 6:19-mj- **1576** |
| | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____January 22, 2019_____ in the county of _____Seminole_____ in the

_____Middle_____ District of _____Florida_____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2251(a) | Production of child pornography. |

This criminal complaint is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Kevin Kaufman, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: ___8/9/2019___

_____
*Judge's signature*

City and state: _____Orlando, Florida_____

DANIEL C. IRICK, U.S. Magistrate Judge
*Printed name and title*

STATE OF FLORIDA                           CASE NO. 6:19-mj- 1576

COUNTY OF ORANGE

## AFFIDAVIT

## INTRODUCTION

I, Kevin Kaufman, being duly sworn, do hereby depose and state as follows:

1.    For the past fifteen years, I have been employed as a Special Agent (SA)
with the Federal Bureau of Investigation (FBI). I am currently assigned to the FBI
Crimes Against Children/Innocent Images Unit in Orlando.

2.    I have received specialized training in the investigations of sex crimes,
child exploitation, child pornography, online solicitation/enticement of a minor, and
other computer crimes.  I have participated in investigations of persons suspected of
violating federal child pornography and child exploitation laws, including 18 U.S.C.
§§ 2251(a), 2252, 2422(b), and 2252A.  I have also participated in various training
courses for the investigation and enforcement of federal child pornography laws in
which computers and cellular phones are used as the means for producing, receiving,
transmitting, and storing child pornography. Additionally, I have participated in the
execution of search warrants involving searches and seizures of computers, computer
equipment, software and electronically stored information.

3.    I submit this affidavit in support of a criminal complaint against
**JUSTIN RICHARD TESTANI**.  As set forth in more detail below, I believe there is
probable cause to believe that on or about January 22, 2019, in the Middle District of

1

Florida, **TESTANI** employed, used, persuaded, induced, enticed, or coerced a minor

to engage in sexually explicit conduct for the purpose of producing visual depictions

of that conduct, or for the purpose of transmitting a live visual depiction of such

conduct, knowing or having reason to know that such visual depiction would be

transported or transmitted using any means or facility of interstate or foreign

commerce, in violation of 18 U.S.C. § 2251(a). In addition, the visual depictions

were actually transmitted using any means or facility of interstate or foreign

commerce.

4.     I make this affidavit from personal knowledge based on my

participation in this investigation, information from other criminal investigators,

information from law enforcement officers, information from agency reports, and a

review of documents provided to me by these witnesses and law enforcement

officers. Because this affidavit is being submitted for the limited purpose of

establishing probable cause in support of a criminal complaint, I have not set forth

each and every fact learned during the course of this investigation.

## INVESTIGATION

### Initial Discovery of TESTANI's Victimization of CV-1

5.     On December 18, 2017, the Trussville Police Department responded to

XXXX Fairway Drive, Trussville, Alabama, in reference to allegations concerning

the sexual extortion of a 13-year-old female identified as Child Victim 1 (CV-1).

Responding officers spoke with T.W., the mother of CV-1. According to T.W., CV-

2

1 disclosed that an unknown person had forced CV-1 to use her cellular phone to record herself performing sexual acts so the person could watch the activity live.

6.     CV-1 was later interviewed, and she stated that on or about December 15, 2017, CV-1 met an unknown person on a chat application. That unknown person was later identified as **JUSTIN TESTANI**. While using the chat application, **TESTANI** used the screen name "Kaceee" and portrayed himself as a female who was approximately the same age as CV-1.

7.     On or about December 18, 2017, the conversation between **TESTANI** and CV-1 turned sexual. **TESTANI** sent CV-1 an image of a young female dressed only in her underwear. (It appears that **TESTANI** sent that image to perpetuate the façade of himself as a young girl.) In return, **TESTANI** requested that CV-1 produce and send an image of herself in only her underwear. CV-1 refused at first, but after **TESTANI** threatened to tell everyone at CV-1's school that she was gay, CV-1 complied. The chat application notified CV-1 that **TESTANI** had saved at least one of the images that CV-1 sent **TESTANI**.[1]

8.     **TESTANI** requested that CV-1 take a completely nude image of herself "or else." **TESTANI** told CV-1 that **TESTANI** knew where CV-1 lived and that **TESTANI** would kidnap CV-1 and CV-1's best friend. **TESTANI** also claimed that he would rape them, then kill them along with CV-1's family. CV-1 complied with

---

[1] When one user records or takes a screenshot of any communication within the chat application, the chat application notifies the other user (i.e. the other party to the chat conversation).

TESTANI's request and sent several nude images of herself. The chat application again notified CV-1 that TESTANI had saved the image that CV-1 sent.

9.     TESTANI continued to demand that CV-1 perform other sexual acts. At one point, instead of continuing with the exchange of images, TESTANI demanded that CV-1 switch to the chat application's video-chat function. TESTANI did not reveal himself during the video-chat. The screen on his end was blank so CV-1 could not see him; she could only hear him.  By his voice, CV-1 realized that he was not a young female, but an adult male.

10.     While on video-chat, TESTANI ordered CV-1 to perform a series of sexual acts. His demands included orders to touch herself, to have the family dog lick whipped cream off her vagina, and to insert objects into her vagina. CV-1 reluctantly performed these acts, and at times even resisted. At one point, CV-1 asked TESTANI, "Why are you doing this to me?" TESTANI replied that if she did not comply, that the "game" would be over (meaning that he would share images and videos of her with other users on the chat application).

11.     At times during the video-chat, CV-1 hung up in an attempt to stop TESTANI's further extortion. But whenever CV-1 did so, TESTANI immediately messaged her, "GAME OVER." CV-1 would then call TESTANI back and plead with him not to spread her images or videos. TESTANI also issued other threats to CV-1. In at least one instance, TESTANI told CV-1 that he had raped the last person who tried to expose TESTANI.

4

12.    At one point, **TESTANI** used his threats to convince CV-1 to provide **TESTANI** with the login and password to CV-1's chat application account. While **TESTANI** had access to CV-1's account, she could not simultaneously access the account. **TESTANI** instructed CV-1 to create a second account, so that he could keep communicating with her, even as he used her original account. CV-1 did so.

13.    **TESTANI** logged into CV-1's original account to access CV-1's list of friends. **TESTANI** then contacted CV-1's friends and attempted to solicit some of them for images, using CV-1's chat application account (and posing as CV-1).[2]

14.    CV-1 was by herself, at home, at the time. Out of fear, CV-1 called her mother. CV-1's mother did not answer and CV-1 left a voicemail. CV-1's mother kept a copy of the voicemail, which law enforcement later listened to. In the voicemail, CV-1 said in a panicked voice, "Help me mama. I really need you right now. Please."

15.    After CV-1's mother heard the message, she contacted CV-1's stepfather, who immediately headed for home. In the meantime, CV-1 (using her second chat application account) continued talking with **TESTANI**, who was still logged into CV-1's original chat application account.

16.    **TESTANI** (using CV-1's original chat account) stated, "I guess I'll post." CV-1 responded, "Noooooo Hold on." **TESTANI** replied, "Nooo u won't

---

[2] This information is based on chats that remain in CV-1's chat application account. CV-1 and/or her parents later took screenshots of some of these conversations.

listen," and CV-1 replied, "Moo Plzzz Nooo Plzzz." **TESTANI** then demanded, "Then do what I say bitch."

17.    CV-1 took a screenshot of their communications at 4:42 p.m. **TESTANI** received notification that CV-1 had taken that screenshot.

18.    As CV-1 and **TESTANI** were engaging in this conversation, CV-1's stepfather arrived at home.  CV-1 showed him the screenshotted conversation.

19.    **TESTANI** started sending CV-1 several photos of CV-1 that **TESTANI** had saved earlier.  The photos depicted CV-1 either posing nude or performing sexual acts.  **TESTANI** then stated, "Oh screen shot. Okay. Game over. I guess you want to be exposed. Bye. I warned you. Wanna try and tell. I guess ima post everywhere. I was just about to del it too."

20.    CV-1's stepfather used his own cell phone to take two pictures of portions of certain (but not all) images that **TESTANI** sent to CV-1 so that **TESTANI** would not know that his conversation was being captured.[3]

21.    CV1's stepfather called the police.  As CV-1 and her stepfather waited for the police to come, **TESTANI** called CV-1.  CV-1's stepfather answered CV-1's cell phone, and informed **TESTANI** that law enforcement had been notified.  At that time, **TESTANI** was still logged into CV-1's chat application account.  Based on later inspection of the account, investigators believe that **TESTANI** deleted the entire

---

[3] Law enforcement officers later asked CV-1's stepfather about this.  He explained that he observed nude images of CV-1, and that he captured only images of CV-1 that he felt would not further embarrass her when shown to law enforcement.

conversation between **TESTANI** and CV-1 from CV-1's original chat application account.  Later, law enforcement officers helped CV-1's mother regain control of the CV-1's chat application account.

**Identification of TESTANI**

22.    On December 18, 2017, when **TESTANI** logged into CV-1's chat application account, the chat application sent a message to the email account associated with CV-1's chat application account.  The email advised that:

    a. another device had logged into CV-1's chat application account;

    b. the device used to log into CV-1's chat application account was a Samsung Galaxy S8;

    c. the IP address used to log into CV-1's chat application account was 2600:1:D216:5D96:D972:7D7F:FFE0:B713; and

    d. the login location was "somewhere near Orlando, Florida."

23.    CV-1's mother conducted an open source check on the IP and verified that Sprint owned the listed IP address, which resolved to an IP address in Orlando, Florida.  Trussville Police Department Detective Ben Short obtained a subpoena that was issued to Sprint, to determine the subscriber of IP address 2600:1:D216:5D96:D972:7D7F:FFE0:B713 as of December 18, 2017.

24.    The subpoenaed records showed that the subscriber of IP address 2600:1:D216:5D96:D972:7D7F:FFE0:B713 was **JUSTIN RICHARD TESTANI** (date of birth xx/xx/1990), with a billing address of XXXX N. Osceola Avenue, Clearwater, Florida, 33755, phone number XXX-XXX-3247.  A law enforcement

database check on **TESTANI** revealed, however, that **TESTANI** also had a possible

address of XXXX Landing Drive, Apt. A, Sanford, Florida 32771.

25.    At that point, the investigation was assigned to a Trussville Police

Department detective who was promoted in January 2018 and left the department in

May 2018.  The investigation lay dormant until CV-1's mother contacted the police

department on September 20, 2018, to check on the status of the investigation.  In

September 2018, the case was re-assigned to Detective David Warmus, who is now

the primary detective assigned to the investigation.

26.    In or about December 2018, Detective Warmus contacted City of

Sanford Police Department Detective William Erwin for assistance.  Detective

Warmus requested that Detective Erwin confirm whether **TESTANI** resided at

XXXX Landing Drive, Apt. A, Sanford, Florida 32771.  Detective Erwin confirmed

that he did.

27.    On or about January 25, 2019, Detective Erwin obtained a state search

warrant.  Before obtaining the search warrant, throughout the week of January 18

through 25, 2019, Detective Erwin conducted surveillance on **TESTANI**'s residence.

During that surveillance, Detective Erwin observed **TESTANI** on at least one

occasion, standing on the porch just outside his residence.  He also observed

**TESTANI**'s vehicle parked in front of the apartment complex on multiple occasions.

28.    The search warrant was executed on January 25, 2019.  During

execution of the search warrant, law enforcement officers seized a Samsung Galaxy

S9+ (IMEI: 355418090519690) cell phone, a Samsung Galaxy S7 (MEID DEC: 089476327102251088) cell phone, a Samsung Tab E 32 GB tablet (IMEI: 352087095234358), and the packaging box for a Samsung Galaxy S8 cell phone. The apartment was in the name of **TESTANI**'s father, who also resided there. The Samsung Galaxy S9+ cell phone was found in **TESTANI**'s vehicle. The box for the Samsung Galaxy S8 cell phone was found in the trunk of **TESTANI**'s vehicle.

29.     The packaging box stated that the device ID of the phone contained therein was 089505844001198371.  CV-1's chat application had previously identified 2600:1:D216:5D96:D972:7D7F:FFE0:B713 as the IP address of the device that logged into CV-1's chat application account on or about December 18, 2017.  Sprint identified device ID 089505844001198371 as the device used for that IP address.

30.     The items seized during the search of **TESTANI**'s residence were packaged as evidence and sent via FedEx to the Trussville Police Department.  After receiving the items, Detective Warmus obtained through the Circuit Court of Jefferson County search warrants for the seized devices.

31.     Thereafter, Detective Warmus was able to access all of the seized devices except the S9+ cell phone, which was password-protected and encrypted.

32.     During the review of Samsung Tab E, Detective Warmus identified VWJETTA0103@GMAIL.COM as the Samsung Tab E's primary email account. Based on the search of all the other devices seized, Detective Warmus was able to discover other Gmail accounts associated with **TESTANI**'s devices, including

9

BROOKLYNBLAND384@GMAIL.COM and

JAYMONEY0103@GMAIL.COM.

33.    Based on the email accounts identified, Detective Warmus obtained

another search warrant through the Circuit Court of Jefferson County and issued the

search warrant to Google on or about February 25, 2019.  The search warrant

authorized the search and seizure of records associated with accounts related or

connected to VWJETTA0103@GMAIL.COM, JAYMONEY0103@GMAIL.COM,

device ID 355418090519690 (i.e. the Galaxy S9+), and device ID

089505844001198371.

34.    Within the VWJETTA0103@GMAIL.COM account, Detective

Warmus located emails concerning **TESTANI'S** Uber account and tax return

processing.

**Discovery of TESTANI's Victimization of CV-3**

35.    On or about April 24, 2019, the FBI in Alabama referred this case as a

lead to me.  On or about the same day, I spoke with Detective Warmus, who

informed me that **TESTANI's** S9+ cellular telephone had been sent to the Tennessee

Valley Regional Forensics Laboratory to be decrypted and unlocked.  Because the

Tennessee Valley Regional Forensics Laboratory could not decrypt or unlock the

cellular telephone, the phone was sent to the FBI Mobile Device Unlock Service

(MDUS) in Quantico, Virginia, to be unlocked.

36.    On or about July 17, 2019, I contacted MDUS in Quantico and

requested that they send me the forensic examination results from the unlocked

phone.  On or about July 18, 2019, I received a thumb drive containing a Cellebrite

extraction report of the unlocked device.

37.    I conducted an initial review of the Cellebrite extraction report.  During

the review, I located a video concerning child victim 3 (CV-3), who is 12 years old.

The video showed that CV-3 and **TESTANI** had communicated using the same chat

application that **TESTANI** used to communicate with CV-1 and CV-2.  The video

also showed that **TESTANI** used a separate phone application to surreptitiously

record his conversation with CV-3.

38.    As shown in a video located on TESTANI's cell phone, **TESTANI**

typed the following instructions to CV-3:  "Good now show full bra full face squeeze

your boobs with hand."  **TESTANI** also instructed CV-3 to turn on the lights so he

could see better.  The video then showed an image that CV-3 sent to **TESTANI** in

response; the image shows CV-3 lying on a bed in her bra, as instructed.  **TESTANI**

then typed, "You giving me a email.tonight rought."  The video shows a timestamp

of "5:34 a.m." on "Tuesday, January 22, 2019" on **TESTANI**'s phone screen.

39.    I located several images of CV-3 in the image section of the Cellebrite

report.  The images bear a strong general resemblance to the aforementioned video;

they appear to be screenshots of similar videos that **TESTANI** took of his

conversations with CV-3.  The underlying videos have not yet been located.

40.    Several of the images showed CV-3 mouthing a hair brush, as if

performing oral sex on it; CV-3 naked and spreading her vagina with her hands; CV-

3 naked and spreading her legs, exposing her vagina; and CV-3 in her bra, laying on a bed.

41.     In one of the images, CV-3 sat on the floor of a bathroom, naked from the waist down with her legs spread.  Her vagina was not visible in the video that **TESTANI** took of the ongoing conversation, because he was simultaneously giving her instructions by typing, and his keyboard blocked the area of the screen that otherwise would have shown her nude vagina.  The video also showed that at the same time, **TESTANI** messaged CV-3 and instructed her to "[t]ake the brush rub it on."

42.     The aforementioned images forensically showed that they were created on or about January 22, 2019.   Additionally, I located a screen capture in which CV-3 told **TESTANI**, "There was no deal anyway you didn't send nothing.  I was up just sending you pics it was fun tho."  **TESTANI** responded, "You listen or your friends I added will send vids and pics."

43.     In an attempt to identify CV-3, I tried to search for CV-3's username in the chat application that CV-3 had used to communicate with **TESTANI**.  I could not locate CV-3's username, likely because she had shut down her account by then.

44.     A different screen capture that I found on **TESTANI**'s phone showed that at one point, **TESTANI** demanded CV-3 provide contacts of her friends.  CV-3 complied and provided the usernames for several of her friends.

45.    On or about July 24, 2019, I contacted some of those usernames through the chat application and located one who was able to identify CV-3. That user provided telephone number (XXX) XXX-8456 for CV-3.

46.    On or about July 25, 2019, the FBI sent an administrative subpoena to AT&T to identify the subscriber of (XXX) XXX-8456. On or about July 25, 2019, I received a response from AT&T, identifying the subscriber of telephone number (XXX) XXX-8456 as N.M., XXX Elm Avenue #X, Seaside, California 93955.

47.    On or about July 25, 2019, FBI SA Jeremiah Wilson went to the residence at XXX Elm Avenue #X, Seaside, California 93955 and made contact with CV-3 and CV-3's mother. CV-3 and her mother confirmed that CV-3 is 12 years old, but that she was 11 when TESTANI interacted with CV-3.

48.    SA Wilson received permission to take several images of the inside of CV-3's residence, including the bathroom and bedroom that CV-3 had access to. I compared the images that SA Wilson took to the images that **TESTANI** had of CV-3. Based on the comparison, I was able to definitively identify CV-3 as a victim. CV-3's mother agreed to allow CV-3 to participate in a forensic interview.

**Forensic Interview of CV-3**

49.    On July 31, 2019, CV-3 participated in a forensic interview at the Archer Child Advocacy Center at 1441 Constitution Boulevard, Salinas, California. I also participated in that interview.

50.    During the interview, CV-3 said that while she using a chat application, she met someone named "Olivia" who said she was approximately 10 years old.

CV-3 and "Olivia" became friends through the chat application.  In January 2019,
"Olivia" requested that CV-3 "friend" a girl named "Sarah."  CV-3 friended "Sarah,"
who portrayed herself as a 13-year-old Victoria's Secret model.

51.    CV-3 informed "Sarah" that she was 11 years old and chatted with
"Sarah" for approximately one week about becoming a model.  "Sarah" talked about
receiving money for images and videos she produced while modeling.  Through their
exchange of messages via the chat application, "Sarah" talked with CV-3 about
becoming a model and asked CV-3 to send clothed images of herself.  CV-3
complied.

52.    As the conversation continued, "Sarah" requested that CV-3 send more
risqué pictures of herself.  CV-3 again complied.

53.    "Sarah" asked CV-3 if she knew of any other models, and asked CV-3
to provide chat application usernames of girls her age who would be interested in
modeling.  CV-3 complied and sent "Sarah" several usernames of girls with whom
she had communicated through the chat application.

54.    At one point, "Sarah" started asking CV-3 to produce videos and
images of herself masturbating.  CV-3 told "Sarah" she would not produce any nude
images or images of herself engaging in sexual acts.  "Sarah" responded by
threatening CV-3, and telling CV-3 that she would send out the pictures she had of
CV-3 to all the friends that CV-3 had previously provided to "Sarah."  "Sarah" told
CV-3 that she better comply with "Sarah's" request or "else."

14

55.   CV-3 then complied with "Sarah's" demands and produced numerous images of herself in the nude and performing sexual acts such as masturbation.   CV-3 stated that she did so because she was scared, felt trapped, and believed the threats that "Sarah" had made.

56.   "Sarah" also requested that CV-3 video-chat with "Sarah."   CV-3 complied, but CV-3 could not see or hear "Sarah" during the video-chat.   "Sarah" instructed CV-3 to produce nude images and perform sexual acts by giving instructions through typing, not speaking.

57.   CV-3 stated that "Sarah" made these requests for sexual images over the course of a single night in January 2019.   At the end of the interaction, "Sarah" instructed CV-3 to close her chat application account and not to tell anyone about what she had done.   "Sarah" threatened to distribute the images CV-3 had produced if CV-3 did not comply.

58.   CV-3 did not tell anyone about these events (prior to contact from law enforcement) out of fear and embarrassment.   CV-3 believed that "Sarah" likely also victimized "Olivia" because "Olivia" later contacted CV-3 and told her to defriend "Sarah."   After the interview ended, CV-3 told me she believed "Sarah" was a male based on the requests "Sarah" had made.

59.   Based on the forensic interview of CV-3 and my review of the screenshots that **TESTANI** took of CV-3, I was able to determine that CV-3 was victimized on January 22, 2019, between 3:00 a.m. and 9:00 a.m. (EST).

60.    A review of the email portion of the Cellebrite extraction report of **TESTANI's** cell phone showed that **TESTANI** had created a false Facebook persona with the name of Sarah Smith.  A review of his emails showed several notifications for "Sarah" from Facebook.

61.    The search warrant on **TESTANI's** email account VWJETTA0103@GMAIL.COM provided geolocation data on **TESTANI's** account logins.

62.    On January 22, 2019, at approximately 12:48 a.m., **TESTANI's** Google location showed that his account was connected to wireless internet at the Landing Apartments in Sanford, Florida.  Later that morning, at approximately 8:48 a.m., **TESTANI's** Google location placed him approximately one block away from his residence in Sanford, Florida.  During this timeframe, **TESTANI** was in contact with CV-3.

**Discovery of TESTANI's Victimization of CV-2**

63.    Detective Warmus reviewed data that Google returned in response to a search warrant on email account BROOKLYNBLAND384@GMAIL.COM. During the review, Detective Warmus discovered that an email had been sent to BROOKLYNBLAND384@GMAIL.COM in reference to "bsairland," a username within the same chat application that TESTANI had used to communicate with CV-1.  The email had been sent from Detective Sergeant (Sgt.) Thomas Terry of the Shiawassee County Sheriff's Office in Michigan.  An attachment to the email

16

contained a copy of a search warrant issued on the chat application username "bsairland."

64.   Detective Warmus contacted Detective Sgt. Terry and learned that Detective Sgt. Terry had conducted an investigation stemming from conversations between "bsairland" and another child victim (CV-2) in or about August 2018.  CV-2 is 12 years old.

65.   On or about August 28, 2018, Shiawassee County Sherriff's Office Sgt. Keith Hansen responded to XXXXX Whitfield Court, Perry, Michigan, in reference to a complaint that a 12-year-old was being harassed online.  There, Sgt. Hansen spoke to the parents of CV-2.

66.   During the interview, CV-2's parents informed Sgt. Hansen that their daughter (i.e. CV-2) was using an online chat application when someone by the username "bsairland" contacted her.  Based on this investigation, there is probable cause to believe that **TESTANI** is the person who conversed with CV-2 using the username "bsairland."

67.   CV-2 told her parents (and her parents subsequently told law enforcement) that she had engaged in conversation with **TESTANI** and during that conversation, **TESTANI** asked CV-2 to take nude images of herself.  After CV-2 refused, **TESTANI** told CV-2 he would track her down and kill her and her family. CV-2 then complied and sent several images showing herself posing in provocative positions with her breast or genitals exposed.

68.   CV-2 later contacted her parents and CV-2's father sent **TESTANI** a message notifying **TESTANI** law enforcement had been notified.  **TESTANI** never responded back.

69.   Detective Sgt. Terry obtained a search warrant for the chat communication account "bsairland."  Detective Sgt. Terry reviewed the search warrant return and could not locate any conversations or images of CV-2.  This is likely because either (a) the chat application did not retain the data or (b) one party to the conversation deleted the conversation and its contents.

70.   I subsequently obtained from CV-2's parents the phone that CV-2 said she used to communicate with **TESTANI**.  I was unable to access the phone because CV-2 and her parents were unable to remember the password.

71.   I spoke to Detective Sgt. Terry about the Shiawassee County Sheriff's Office investigation and requested the information on the return of the "bsairland" search warrant.  Detective Sgt. Terry sent the return to me and I reviewed it.

72.   During the review, I discovered that the account was registered as belonging to a 12- or 13-year-old girl.  The account was established on or about December 3, 2016.  The initial content generated by the "bsairland" account user included pictures and chats that are consistent with activity of an actual 12- or 13-year-old girl.

73.   The login IPs in the search warrant return for the "bsairland" account show that the account was originally opened by a user in or around Dunkirk, New York.  The login IPs further show that in or about March 2018, the account was no

18

longer accessed from in or around Dunkirk, New York; instead, it was accessed from in or around New Port Richey, Florida.

74.     Based on the IP login information, my review of the contents of the "bsairland" account, and the fact that email notifications concerning the "bsairland" account were later sent to an email account that **TESTANI** controlled, I believe **TESTANI** hijacked this account from another child victim yet to be identified.

**TESTANI Charged in Alabama and Arrested in Florida**

75.     On or about March 19, 2019, the Sanford Police Department arrested **TESTANI** for sexual extortion of CV-1.   **TESTANI** was later charged with stalking CV-1 as well, on April 12, 2019.  On May 2, 2019, **TESTANI** was released on bond. On June 17, 2019, however, **TESTANI** was charged again, this time with electronic solicitation of a child (i.e. CV-1).  **TESTANI** was arrested in connection with that charge on July 25, 2019 and is awaiting extradition back to Alabama.

## CONCLUSION

76.     I believe there is probable cause to believe that on or about January 22, 2019, **TESTANI** employed, used, persuaded, induced, enticed, or coerced a minor to engage in sexually explicit conduct for the purpose of producing visual depictions of that conduct, or for the purpose of transmitting a live visual depiction of such conduct, knowing or having reason to know that such visual depiction would be transported or transmitted using any means or facility of interstate or foreign

commerce, and that the visual depictions were actually transmitted using any means

or facility of interstate or foreign commerce, all in violation of 18 U.S.C. § 2251(a).

Kevin Kaufman, Special Agent
Federal Bureau of Investigation

Sworn and to and subscribed to me this  9  day of August __, 2019.

DANIEL C. IRICK
United States Magistrate Judge

20